UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re:                                                                           Case No. 05-22239

LAWRENCE R. KING and
CYNTHIA M. KING,                                    Chapter 7

      Debtors.                                           Hon. Walter Shapero
_____/
SPECIALTY DISTRIBUTORS, INC.,
a Michigan Corporation,

      Plaintiff,

v.                                                                    Adv. Proc. No. 05-2082

LAWRENCE R. KING and
CYNTHIA M. KING,

      Defendants.
_____/

OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Facts

This is an adversary proceeding seeking a judgment on nondischargeability under Section 523(a)(2) and (4). Plaintiff moved for summary judgment on collateral estoppel grounds based upon a state court default judgment against the Defendant Debtors entered on January 21, 2005. The underlying debt involved purchases in the amount of $7,936.07 made from Plaintiff over a period of time for materials used in construction projects by L.R.K. Plaster King, Inc., a company formed and owned by the Debtor Defendants. Defendants personally guaranteed payment for these purchases. Plaintiff's

1

commenced the state court action on October 19, 2004, against L.R.K. Plaster King, Inc. and both Defendants individually. The state court complaint asserted two counts against Defendants: (1) "Open Account/Account Stated Debt"; and (2) "Builders Trust Fund Act Fraud and Conversion Against All Defendants, Jointly, Severally, and Jointly With Each Other." The account stated count (Count I) is not a cognizable basis under either Section 523(a)(2) or (4). However, the relevant count in this nondischargeability action is Count II of the state court complaint, entitled: "Builders Trust Fund Act Fraud and Conversion Against all Defendants, Jointly and Severally, and Jointly with Each Other," which alleged, in relevant part, the following:

> 10. Defendants have received payment from their customers for all of the material supplied by plaintiff for the jobs performed by defendants on which they used plaintiff's materials.
> 11. Defendants are all liable to Plaintiff for fraud in their failure to use those funds to pay SDI instead of diverting the money to their own personal use and uses not permitted by the Builders Trust Fund Act.
> 12. The Michigan Building Contract Fund Act (Builders Trust Fund Act) MCLA 570.151 et seq., requires contractors to use all funds received from construction projects first to pay bills incurred for labor and material in such projects before any funds are used for the contractor's own purposes, and violation of the Act constitutes felony fraud. The courts have allowed the Act to be used for civil fraud complaints.
> 13. Defendants violated the Act, and all defendants participated in and derived the financial benefits by their violations and their use of plaintiff's money and property.
> 14. By their fraudulent diversion of those trust funds, the defendants effectively converted plaintiff's property and money to their own use by their receipt of the materials, by their receipt of the money for those materials, and then, by their control of the money and property, they exercised dominion over the property and money and those actions effectively constituted the conversions.
> 15. Plaintiff is entitled to and demands treble damages against defendants, jointly and severally, for the conversions pursuant to Michigan statutes covering conversion of property, limiting the damages to the $25,000 jurisdiction of this court.

The parties do not dispute that Defendants never appeared in the state court action to defend themselves, and a default judgment was entered on January 21, 2005, in favor of Plaintiff in the amount of $25,340.00. The judgment amount was calculated on the amount of actual damages being tripled under Michigan law providing for treble damages for acts of conversion of property. No procedural infirmities have been alleged by Defendants in connection with the default judgment.

Defendants filed this Chapter 7 bankruptcy case on May 16, 2005, and Plaintiff commenced this adversary proceeding on July 14, 2005. Plaintiff bases its Motion for Summary Judgment on the argument that the state court record and default judgment preclude Defendants from relitigating the Section 523(a)(4) nondischargeability action under the doctrine of collateral estoppel, thus entitling it to judgment under Section 523(a)(4) as a matter of law.

Defendant has objected to summary judgment, arguing two points: (1) the Defendants are individuals, and the Michigan Builders Trust Fund Act does not apply to individuals; or, alternatively, (2) Plaintiff is estopped in this nondischargeability action from seeking relief because Plaintiff consented, ratified, or otherwise acquiesced to Defendants' breaches of fiduciary duty.

The Court has reviewed both the bankruptcy and state court records, and for the reasons stated below, grants Plaintiff's Motion, but limits the amount deemed nondischargeable to single damages.

<u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3

05-02082-dob Doc 30 Filed 06/09/06 Entered 06/12/06 12:19:11 Page 3 of 11

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991). In other words, summary judgment may be appropriately granted where the issues in a particular case involve solely the application of law to undisputed facts. *Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980).

The default judgment in the state court appears as part of a state court form combining: (1) a request by the attorney for the Plaintiff to enter the default of the Defendants (who in this case were Lawrence R. King and Cynthia M. King, individually, and L.R.K. Plaster King, Inc.), for failure to appear, which states the amount due as $25,000, plus costs of $305, and "other" of $35, stating the same to be for a sum certain which by computation can be made certain; the said request being under oath; and (2) a statement on the same form signed by the Clerk of the Court to the effect that the default of the Defendants is entered for failure to appear; and (3) a further statement signed by the Judge that says:

> It is ordered this judgment is granted for $25,340. This judgment will earn interest at applicable statutory rates.

The face of the form does not contain any representation or statement as to when the

Defendants were served with the summons and complaint and the fact that the time to answer or otherwise plead had expired, but presumably that was a fact which appears in the state court file, and in any event, such has not been raised as an issue here.

<u>Application of Collateral Estoppel</u>

Collateral estoppel applies in bankruptcy dischargeability actions. *Grogan v. Garner*, 498 U.S. 279 (1991). The *Grogan* Court also determined that a preponderance of the evidence standard must be used for collateral estoppel determinations in dischargeability proceedings. *Grogan*, 498 U.S. at 291. However, *Grogan* did not address what effect a default judgment would have on the application of collateral estoppel in dischargeability proceedings.

In the case of *In re Calvert*, 105 F.3d 315 (6th Cir. 1997), the Sixth Circuit determined that collateral estoppel can apply even in a true default judgment situation (i.e., complete absence from the proceedings by the defendant). *Calvert*, 105 F.3d at 317 (quoting *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985)). The Sixth Circuit adopted the two-part test enunciated by the Supreme Court in *Marrese*: (1) whether state law gives preclusive effect to default judgments; and (2) if the subsequent claim is precluded, the court may then look to whether Congress intended for an exception to 28 U.S.C. § 1738 to apply to the situation at hand.[1] *Calvert*, 105 F.3d at 317 (citing *Marrese*, 470 U.S. at 386). As a California default judgment was at issue in *Calvert*, the Sixth Circuit determined that California law did give preclusive effect to default judgments, and that Congress did not intend for an exception to Section 1738 to apply to true default judgments. *Calvert*,

---

[1]Section 1738 requires the federal courts to give full faith and credit to state court judicial proceedings.

5

105 F.3d at 320-22.

"True" default judgments are given preclusive effect in Michigan. The basic premise that a default judgment is a determination on the merits of the essential issues raised in support of the judgment, is well-settled in Michigan. *See Rohe Scientific Corporation v. National Bank of Detroit*, 133 Mich. App. 462, 467, 350 N.W.2d 280 (1984); *see also In re Waldorf*, 206 B.R. 858, 867-68 (Bankr. E.D. Mich. 1997) (recognizing the preclusive effect default judgments have in Michigan for collateral estoppel determinations, citing both Michigan cases as well as its own previous holding).

Although Michigan law would give preclusive effect to a true default judgment such as the one in this case, the elements of collateral estoppel must still be satisfied. For collateral estoppel to apply, Michigan requires that the parties must be the same, the prior proceeding must have culminated in a valid, final judgment, and the issue must have been actually litigated and necessarily determined. *See People v. Gates*, 434 Mich. 146, 154, 452 N.W.2d 627 (1990). In this case, there is no question the parties were the same in the state court proceeding and this one. Further, there is no dispute that the prior judgment was valid and final. However, the Court will examine the "actually litigated" and "necessarily determined" elements, as well as address Defendants' two specific arguments noted prevsiously.

The Court has reviewed the state court record, specifically the state court complaint, upon which the state court default judgment was entered to determine the issues raised in support of the default judgment. *See Waldorf*, 206 B.R. at 865 (citing *Wheeler v. Laudani*, 783 F.2d 610, 615-16 (6th Cir. 1986) ("To determine the full meaning and effect of an ambiguous prior state judgment, the bankruptcy court must examine the entire record of the state proceedings."). While it is true that the

6

state court did not discuss or even identify the allegations in Plaintiff's state court complaint in the default judgment, it is not required to. The entry of the default judgment upon the submission of the issue to the trier of fact via a properly pleaded complaint is sufficient. *Sahn v. Brisson*, 43 Mich. App. 666, 670-71, 204 N.W.2d 692 (1973) ("[T]he entry of a default judgment is equivalent to an admission by the defaulting party to all of the matters well pleaded.") (citing *Lesisko v. Stafford*, 293 Mich. 479, 292 N.W. 376 (1940); 7 *Callaghan's Michigan Pleading & Practice* (2d ed.) § 44.06, at 26).

Section 523(a)(4) states that a debt shall not be discharged if the debt is:

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

The Michigan Builder's Trust Fund Act provides:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

M.C.L. § 570.151.

If it was determined that Defendants are contractors or subcontractors under applicable provisions of the Michigan Builders Trust Fund Act, then they will be found to be "fiduciaries" under 11 U.S.C. § 523(a)(4), and the indicated debt is thus nondischargeable. *See Cappella v. Little* (*In re Little*), 163 B.R. 497, fn.2 (Bankr. E.D. Mich. 1994)("A person who is a trustee under § 570.151 is a fiduciary for purposes of § 523(a)(4)").

In comparing the Builders Trust Fund count of the state court complaint with the above, the

7

Court concludes that the Section 523(a)(4) elements were "actually litigated" and "necessarily determined." The above-quoted Builders Trust Fund count allegations in the state court complaint include all of the required elements for a Section 523(a)(4) cause of action–i.e., Section 523(a)(4) is satisfied in that the state court complaint and default judgment actually litigated and necessarily determined: (1) The subject transactions and Defendants actions were governed by the Michigan Builders Trust Fund Act and, thus, "fiduciaries" under Section 523(a)(4); and (2) Defendants violated the Builders Trust Fund Act.

Count II of the Complaint is entitled, "Builders Trust Fund Act Fraud and Conversion . . . ." Paragraph 12 of the Complaint speaks specifically to the Michigan Building Contract Fund Act, and then Paragraphs 14 and 15 of the Complaint, as quoted above, specifically allege that by fraudulent diversion of the trust funds, Defendants effectively converted them and that such entitles Plaintiffs to treble damages, "pursuant to Michigan statutes covering conversion of property."

Under Michigan common law, conversion is defined as:

> [A]ny distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.

*Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360 (1960) (citing 1 Restatement of Torts, § 223; *Nelson & Witt v. Texas Co.*, 256 Mich. 65, 239 N.W. 289 (1931)). The Michigan statute regarding conversion (M.C.L.A. § 600.2919a) provides for treble damages for conversion. It states, in pertinent part:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

8

The statute does not define what actions constitute a "conversion." It simply uses the word "converting," leaving its meaning to another source. That source would most appropriately be that which the common law of Michigan defines as such. One would have to say that a contractor who by statute is deemed to hold funds given it by an owner as a fiduciary (for the benefit of either the owner or subcontractors), in situations where those funds are not properly expended, can be fairly said to have engaged in a "wrongfully exerted . . . act of dominion . . . over another's personal property in denial of or inconsistent with the rights therein." As such, the common law requirements of a conversion have been met.

In the State Court complaint, Paragraph 14 states:

> By their fraudulent diversion of those trust funds, the defendants effectively converted plaintiff's property and money to their own use by their receipt of the materials, by their receipt of the money for those materials, and then, by their control of the money and property, they exercised dominion over the property and money and those actions effectively constituted conversions.

By its terms, the state court Complaint thus essentially incorporates the common law conversion criteria, and because default judgment entered upon the submission of the issue to the trier of fact via a properly pleaded complaint is sufficient for collateral estoppel, Defendants are collaterally estopped from defending on the issue of conversion as well. *See Sahn*, 43 Mich. App. at 670-71. Accordingly, the entire state court judgment consisting of trebled damages should be given collateral estoppel effect.

The Court further rejects Defendants' arguments the Michigan Builders Trust Fund Act does not apply to individuals, such as themselves; or, alternatively, that estoppel should somehow apply because Plaintiff allegedly consented, ratified, or otherwise acquiesced to Defendants' breaches of

9

fiduciary duty. The Court rejects these arguments because: (1) these are defenses that could have been raised in the state court litigation, but which were not, and collateral estoppel applies as to any such defenses as well; and (2) the statute does not limit its application to individuals–rather, it talks about a "contractor," which can be either an individual or another entity, corporate or otherwise.

While the Court's conclusion may seem harsh to Defendant, it points up the necessity of potential debtors defending such cases in state court (particularly where a bankruptcy filing is in the wind), at risk of being exposed to the adverse consequences of the collateral estoppel doctrine in the subsequent bankruptcy non-dischargeability proceeding. The *Calvert* Court pointed out that, "state court fraud suits and bankruptcy discharge proceedings are frequently the same;" a debtor is, therefore, fair warned to carefully consider the state court allegations against him in making his litigation choices.[2] *Calvert*, 105 F.3d at 321.

## Conclusion

Based upon the state court record before the Court, Plaintiff's motion for summary judgment on collateral estoppel grounds is granted in the full amount of $25,340.00. An appropriate Order will enter.

---

[2]The *Calvert* Court found the debtor's policy arguments in that case unconvincing:

If this Court were to hold that where the defendant does nothing to defend the suit collateral estoppel will not apply, an unacceptable incentive may result. A defendant contemplating bankruptcy may permit a default judgment to be entered to avoid a jury determination of fraud damages, or in the hopes that, by postponing the time when the fraud issue will be tried, memories may fade and evidence may become unavailable.

*Calvert*, 105 F.3d at 321.

**Entered: June 09, 2006**

> /s/ Walter Shapero
> **Walter Shapero**
> **United States Bankruptcy Judge**